IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| WILLIAM STARLING; | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 23-173 |
| | ) | |
| v. | ) | |
| | ) | |
| ATRIA SENIOR LIVING, INC.; | ) | |
| | ) | |
| Defendant, | ) | |

## COMPLAINT

1. William Starling worked for eight years for Atria Senior Living, Inc., as a maintenance technician at Atria's Virginia Beach facility.

2. When Atria announced a vaccine mandate, Mr. Starling could not participate because of his deeply held religious beliefs.

3. Rather than offer a reasonable accommodation for Mr. Starling, Atria terminated him without justifying its actions according to an undue hardship analysis.

4. Atria took the deeply unserious position that it was "accommodating" by barring his entry into the workplace for 30 days, during which time he could use any accrued leave. Otherwise, it would be unpaid until his termination 30 days later.

5. In taking this approach, Atria discriminated against Mr. Starling and failed to accommodate his religious beliefs as required under Title VII of the Civil Rights Act of 1964.

## PARTIES

6. William Starling is a 69 year-old resident of Chesapeake, Virginia. He worked as a maintenance technician at Altria from 2012-2021, at which time Altria terminated him.

7. Atria Senior Living, founded in 1996, is one of the largest providers of independent living, assisted living, and memory care in North America. Atria manages more than 380 communities throughout the U.S. and Canada, which provide residential services to more than

40,000 older adults. The company's stated mission is to help older adults continue to thrive. Its communities offer residents many opportunities to stay active and engaged, with programs and services tailored to their needs and interests.[1]

## JURISDICTION AND VENUE

8. This Court has federal question jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(4) (jurisdiction over Civil Rights claims). Plaintiff's claims arise out of Defendant's violations of Title VII of the Civil Rights Act of 1964 and the Virginia Human Rights Act.

9. This Court also has and jurisdiction under 28 U.S.C. § 1332 (diversity of citizenship). Defendant is a corporation headquartered in 300 East Market Street, Suite 100, Louisville, KY 40202; Mr. Starling is a resident of Chesapeake, Virginia.

10. This Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367 and Virginia Code §§ 8.01-620 and 8.01-328

11. Venue is proper in the Eastern District of Virginia, because this is the judicial district in which the unlawful employment practices are alleged to have been committed. 28 U.S.C. § 1391

12. Plaintiff filed charges of religious discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 18, 2021.

13. Mr. Starling received his "Right to Sue" letter from the EEOC and has exhausted his administrative remedies under both Title VII and the Virginia Human Rights Act. *McIntyre-Handy v. West Telemarketing Corp*. 97 F. Supp. 2d 718 at726 (E.D.Va, 2000). *See also*, 42 U.S.C. § 2000e-5(f)(3).

## FACTUAL AND PROCEDURAL BACKGROUND

14. William "Willie" Starling began work as a maintenance technician at Atria's Virginia

---

[1] Stephanie Watson, *Atria Senior Living Review*, FORBESHEALTH.COM, (March 31, 2023), at https://www.forbes.com/health/senior-living/atria-senior-living-review/.

Beach location in September of 2012.

15. Throughout his tenure, he received excellent reviews and expressions of appreciation. **(Exhibits A and B)**.

16. On January 8, 2021, Atria Senior Living, Inc. ("Atria") Chairman and CEO, John Moore, issued a directive stating that, in response to the COVID-19 pandemic, receipt of a COVID-19 mRNA vaccine will be mandatory for all Atria employees.

17. The letter and attached FAQs stated, in relevant part: "Beginning May 1, 2021, a completed COVID-19 vaccination will be required of all employees at Atria's U.S. communities," with "potential accommodations" for "limited cases" such as "certain medical conditions." If, however, the employee did not receive a vaccine by May 1, "[his or her] employment will be terminated." **(Exhibit C)**.

18. Mr. Starling requested a religious exemption to the vaccine mandate on January 25, 2021. In it, he stated, "The only accommodation I need is to be exempt from taking the vaccine. I will continue all other requirements including wearing a mask and gloves and submitting to all other COVID-19 requirements." He continued, "I enjoy working for this company and would like to continue if we can resolve this issue."

19. In an accompanying statement, he stated, "I take my Christian beliefs very seriously, and I will not waiver on God's Word. I feel mandating this vaccine puts me in a predicament and to comply would cause me to violate my sincerely held religious beliefs […] I will not be able to consent to receiving the vaccine on religious principle. I must obey God rather than man." **(Exhibit D)**.

20. In response, in a letter dated January 28, 2021, Atria Executive Director Cat Anderson stated, "Atria has evaluated your request and, in response, the Company has agreed to provide you with 30 days of leave starting May 1, 2021 through May 30, 2021 as an accommodation. While on

leave, you will be entitled to use any accrued PTO/sick leave and EIB (if available). Otherwise, the leave will be unpaid." **(Exhibit E).**

21. On August 31, 2021, Atria terminated Mr. Starling.

22. Mr. Starling joint-filed a complaint with the Equal Employment Opportunity Commission and the Virginia Office of Civil Rights on October 18, 2021. **(Exhibit F)**.

23. He received a Notice of Right to Sue from the EEOC on January 24, 2023. **(Exhibit G)**.

## CLAIMS FOR RELIEF

### COUNT ONE
**(Title VII Religious Discrimination: failure to accommodate)**

24. Paragraphs 1-23 are incorporated herein.

25. Under Title VII, a plaintiff alleging religious discrimination based on a failure to accommodate:

> [M]ust first set forth a *prima facie* case that (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement.

*Chalmers v. Tulon Co.*, 101 F.3d 1012, 1019 (4th Cir. 1996); *cited in Gonzalez v. Hogg Ins. Group, Inc.*, (E.D.Va, 2012).

26. As the Supreme Court has stated,

> Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment, affirmatively obligating employers not "to fail or refuse to hire or discharge any individual . . . because of such individual's" "religious observance and practice." […] when an applicant requires an accommodation as an "aspec[t] of religious . . . practice," it is no response that the subsequent "fail[ure] . . . to hire" was due to an otherwise-neutral policy. Title VII requires otherwise-neutral policies to give way to the need for an accommodation.

*EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 775, 135 S. Ct. 2028, 2034 (2015)

27. Mr. Starling's religious beliefs are bona fide and conflict with Atria's vaccination

requirement. He informed his employer, which fired him.

28. "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process – a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009). Atria engaged in no such process, only offered a suspension pending termination.

29. "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . present[s] a crisis of conscience for many people of faith. It forces them to choose between the two most profound obligations they will ever assume – holding true to their religious commitments and feeding and housing their children. To many, this is the most horrifying of Hobson's choices." *Sambrano*, 19 F.4th at 841.

## COUNT TWO
### (Title VII Religious discrimination: disparate treatment)

29. Paragraphs 1-29 are incorporated herein.

30. The Civil Rights Act of 1964 states in relevant part:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

31. In firing Mr. Starling, Atria discriminated against his religious beliefs.

"To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) that he was a member of a protected class, (2) that he

experienced an adverse employment action (3) that he was qualified for the position, and (4) that similarly-situated employees outside the protected class received more favorable treatment" *Rayyan v. Va. DOT*, 719 Fed. Appx. 198 (4th Cir. 2018); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

32. Mr. Starling is a member of a protected class- he is an adherent to the Christian faith (Protestant) who was unable, due to his congregation's statement of faith, to accept the vaccine.

33. Mr. Starling suffered an adverse employment action when Defendant Altria suspended and then terminated him.

34. He was qualified for the position as is evidenced by his exemplary performance reviews and the lack of any effort to punish or terminate him before the vaccine mandate.

35. Other employees outside the protected class we treated more favorably (i.e., were not suspended or terminated) because they did not share the same religious beliefs requiring them to refuse the vaccine, and they were not fired.

36. Mr. Starling was coerced into choosing between his faith and his livelihood, which "imposed an obvious and substantial burden on her religion." *Sambrano v. United Airlines*, Inc., 19 F.4th 839, 841 (5th Cir. 2021) ("forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion.").

37. He was denied employment and placed in financial distress due to his bona fide religious beliefs. He has suffered a loss of earnings and benefits, a loss of health insurance coverage, and a loss of and impairment of his earning capacity and ability to work because of the denial. Accordingly, Altria treated Mr. Starling "more harshly than other employees of a different religion, or of no religion, who did not possess her religious beliefs as they relate to the vaccine. *See McIntyre-Handy v. West Telemarketing Corp.*, 97 F. Supp. 2d 718, 729 (E.D. VA, May 19th, 2000).

## COUNT THREE
### (Virginia Human Rights Act: religious discrimination)

38. Paragraphs 1-37 are incorporated herein.

39. The Virginia Human Rights Act (VHRA) prohibits discrimination in employment based on race; color; religion; national origin; sex; sexual orientation, gender identity; pregnancy, childbirth, or related medical conditions; marital status; status as a veteran; or age. Va. Code § 2.2-3900 *et seq*. (amended by the Virginia Values Act).

40. Section 2.2-3905(B)(1)(a) of the Virginia Code describes it as an "unlawful discriminatory practice" for an employer to "[…] discharge or otherwise discriminate against any individual with respect to such individual's compensation, terms, conditions, or privileges of employment because of such individual's […] religion." § 2.2-3902 of the Code furthermore states that "the provisions of this chapter shall be construed liberally for the accomplishment of its policies.

41. "Religion" includes any outward expression of religious faith, including adherence to religious dressing and grooming practices and the carrying or display of religious items or symbols. VHRA at §2.2-3901 (E).

42. Courts, including the Fourth Circuit, have found that, such discrimination occurs when an employer engages in disparate treatment of an individual. As the Fourth Circuit has stated, "Disparate treatment occurs when an employer treats certain people less favorably than others on the basis of a protected classification such as race." *Carter v. Ball*, 33 F.3d 450, 456 n.7 (4th Cir. 1994) (citations omitted). See also *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1017 (4th Cir. 1996).

43. Defendant violated the VHRA when it terminated Mr. Starling for following his bona fide religious beliefs in refusing to take the COVID-19 vaccine.

## COUNT FOUR
### (Virginia Human Rights Act: failure to accommodate)

44. Paragraphs 1-43 are incorporated herein.

45. It is the Commonwealth's policy "to eliminate all discrimination on account of...religion...from the employment practices of the Commonwealth." VHRA § 2.2-4200. The VHRA furthermore states that "the provisions of this chapter shall be construed liberally for the accomplishment of its policies." *Id.* at 2.2-3902.

46. Eliminating employment discrimination against religion is not only an essential precept of the VHRA, but is consistent with the long-standing Virginia Act for Religious Freedom (Va. Code § 57-1), which declares that "Almighty God hath made the mind free; ...the Holy Author of our religion, who, being Lord both of body and mind, yet chose not to propagate it by **coercions** on either, as was in his Almighty power to do."

47. The Act declares that no man "**shall be enforced**, restrained, molested or burthened, **in his body** or goods, nor shall otherwise **suffer on account of his religious opinions or belief**; but that all men shall be **free to profess**, and by argument to maintain, **their opinions in matters of religion**, and that the same **shall in no wise** diminish, enlarge or **affect their civil capacities**." Such actions, as declared by the Commonwealth, would "be an **infringement of natural right**." (Emphasis added).

48. Courts, including the U.S. Supreme Court and the Fourth Circuit Court of Appeals, have interpreted the duty not to discriminate to include a **duty on the part of an employer to accommodate** so that, "an employer must, to an extent, actively attempt to accommodate an employee's religious expression or conduct even if, absent the religious motivation, the employee's conduct would supply a legitimate ground for discharge." *Chalmers v. Tulon Co.*, 101 F.3d 1012, 1018 (4th Cir. 1996).

49. Mr. Starling expressed to Defendant Atria that his religious beliefs prohibit him from accepting the COVID-19 vaccine.

50. Defendant failed to accommodate Mr. Starling and went on to fire him, thus discriminating against him on the basis of his religion in violation of the Virginia Human Rights Act.

51. "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process – a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

52. No such dialogue occurred here. Accordingly, Atria violated the VHRA by failing to accommodate his request.

## JURY TRIAL

Plaintiff requests a jury trial.

## PRAYER FOR RELIEF

WHEREFORE,

Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss in the amount of $63,880.16.

b. Punitive damages in the amount of $350,000.

c. Prejudgment interest;

d. Reasonable costs and attorney's fees; and,

e. Such other relief as the Court finds just and equitable.

Dated: April 24, 2023

Respectfully Submitted,

_____
Counsel

E. Scott Lloyd
Lloyd Law Group, PLLC
Bar # 76989
15 Chester Street
Front Royal, VA 22630
(540)631-4081
scott@lloydlg.com
Counsel for the Plaintiff

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I will cause the foregoing Complaint with exhibits to be served upon Defendant on April 25, 2023.

_____
SCOTT LLOYD